v. David J. Rickert, ex-King County Treasurer, ex-Officio County Collector, v. Benjamin Appellini, arguing on behalf of the Appointed Appellant, v. Mr. Thomas J. McNulty, arguing on behalf of the Appellant, v. Benjamin Appellini, v. Mr. Joseph Wallace. Thank you. Mr. McNulty. Good afternoon, Your Honors. Thomas J. McNulty of Neal Gerber and Nisenberg on behalf of the roughly 600 King County property taxpayers and homeowners who are the objectors and the opponents in this case. Your Honors, this case invites the Court to interpret the provisions of Section 18-155 of the Property Tax Code relative to the number of subsequent year adjustments a county clerk may make against property taxpayers in regard to multi-county apportionment factors for a given tax year. In fact, if it please the Court, we say the correct interpretation is that the clerk is authorized to make one adjustment in the subsequent year for the purpose of replacing the placeholder factors that were used initially for purposes of getting bills out on time. But what if there's a mistake that wasn't discovered? Let's assume they make one correction, but there's a subsequent study that's done that uncovers a mistake. Then what happens? Once the adjustment is made in the subsequent year, that's it. That's the end of the clerk's power. Now, at that point in time, let's assume the May 2013 certified factors were wrong. And the 2013 tax bills for Cook, DuPage, and King County taxpayers were also wrong because they used those wrong factors. The remedy provided by the General Assembly is that the 2013 taxpayers in Cook and DuPage should have filed a tax injection complaint, like my clients did, and litigated the accuracy of the multi-county apportionment factor that was used. How would they know the mistake was made? In this case, they would know because in May of 2014, the Department took several bites at the apple here, but in May of 2014, the Department announced, we made a mistake, or at least we think they made a mistake. We don't know if they did or they didn't. They've taken three shots at this. For the purpose of this proceeding, I assume we'll concede for the purpose of argument that the December 14 certification is correct. And that's part of this case. For all we know, the Department could be revising the 2012 factors right now. And how could the King County clerk apply the second certification to the 2012 taxes if the 2012 taxes were issued in 2013, collected in 2013, supposedly went to judgment in 2013, and the certification came out in 2014? I'm not sure. The certification came in May of 2013, which is after the 2012 tax bills had gone into collection. So he did what the statute told him to do, which is... When you say it came out in May of 2013? No, I think the question was how would taxpayers know that there was something wrong for 2013, that the 2013 adjustments... Well, could we clarify something? When you say the 2012 taxes, are you referring to the taxes that are collected for 2012 in 2013? Yes, Your Honor. And what happened in that case is because the work of the Department was not completed by the deadline, the clerk used placeholder, what we call in our briefs placeholder factors. That's what he's supposed to do in order to get the bills out. Then the General Assembly has thought this all out. Then when it's finally certified, then you get to make an adjustment in the subsequent year, provided that the certified factors are different from the placeholder factors. So what you wind up doing is ear in your ears, putting people where they would have been had the factor been done timely. When was the second certification made? The second certification was made in May of 2014. Then they made a third certification in December of 2014. The clerk decided to go with the December 2014 certification for purposes of taking the second bite of the apple and adding property taxes to the 2014 tax year, taxes collected in 2015. For 2014? Is that as a result of the 2012? That's correct, Your Honor. That's what happened in this case. The clerk took two bites of the apple. Why do you say the clerk instead of the Department of Revenue or the DLTA? Well, the King County clerk is the person who took those factors, extended property taxes, added property taxes to my client's tax bills in 2014 in order to do the second adjustment. When the statute says you get to make one adjustment in the subsequent year. That's the key phrase in this case. Is in the subsequent year. Is the subsequent year more than one year? We say no. It's the plain reading of the statute. The 2012 taxes were only collected in 2013. The 2012 taxes weren't collected in 2014 or 2015. So the certification that was made was made to the 2012, and then the second certification was made to the 2013 taxes. The 2012 taxes were based on placeholder factors. They were factors that were used as required by the statute because we didn't have the work done on time. The General Assembly has thought through this, and what they've said is March 15th is the deadline for this certification because we don't want the tax bills held up. If the department goes beyond March 15th, then the clerk uses an estimated placeholder factor, and then the accounting squares up once the department certifies the factor. In this case, it was after March 15th, and the statute says to the clerk, look at these certified factors. Are they different from the estimated placeholder factors? The answer in this case, yes, they were. Okay, what's the subsequent year? Because that's the year you have to make the adjustment. At that moment in time, the subsequent year was the 2013 tax year. So the clerk correctly, well, we agree with the county, the clerk correctly for the 2013 tax year made the adjustment to correct for the multi-county apportionment factor. Absolutely fine. That's your order to stop. You're basically telling me that there's no inequity that arose in 2013. There may have been, Your Honor, but the General Assembly has provided the remedy for that inequity. It's the tax objection complaint. No, because if there was some problem with the apportionment of taxes in 2013, then the clerk would probably have used the place factors, like you said, until they got the new certification, and then, quote, unquote, in the next subsequent year, would have given the, or would have extended the taxes on the new certification. Let me try to clear that up because we have a lot of years flying around here, and I know it can be confusing because in Illinois, we collect taxes a year in arrears. So 2012 taxes were collected in 2013. 2013 taxes were collected in 2014. So, and the taxes are due, so the 2012 taxes were due June 1, 2013, and September 1, 2013. Now, the deadline for the certification of the factor in the first place was March 15, 2013, in order for it to be reflected on the bills. It didn't happen, so we had to use the estimated placeholders. Now, we get past the deadline. The statute contemplates the Department on finishing their work on time. So what happens? We get the certified factors. So for the 2013 tax year, collected in 14, the clerk gets to make an adjustment to square up, you know, account for the difference in the factors, the difference between the estimate and the difference between the actual, and that happens. So our position is once he did that in 2013, taxes payable in 2014, that was the end of his authority. Now, if there was... Is that based on the... Yes. Is that based on the change that was published in May of 2014? May of 2013. I'm sorry, 2013. Yes, ma'am. But for which taxes? Are we talking about the 2012 taxes again to correct for the 2012? He gets to correct 2013 in order to square up for 2012. 2012 collected in 13. Right. For the 2013 tax year, taxes collected in 14 by virtue of this statute, when the placement factors are shown to be different, he gets to square up and add or subtract from the 2013 taxes in order to square up for 2012. That's the statute. I understand. The bottom line is you're saying you get to correct a mistake one time. One time. If the Department of Revenue makes a mistake, that's tough. They have made a mistake. The clerk is without authority to make a second adjustment for the taxes of 2012 that should have been collected in 2013. That's correct, Your Honor. It's as noted by this court in the Hamer case. It's a bedrock principle. There has to be finality in the property tax system. The General Assembly knows that and they've provided for it. So there's one change that you get to make. Otherwise, as I was saying, the Department could be recertifying 2012 right now. Under my opponent's theory, for 2017, I'm going to see a 2012 adjustment on my tax bill. That's just not anywhere near. That stretches the meaning of the words in 18-155 well beyond what they can bear. So this is a case of statutory construction. The other rule, the other principle here is that taxes can only be assessed, extended, and collected in the manner expressly provided by law. You can't apply powers when the General Assembly is making specific declarations as to who does what and when they do it. Now, doesn't this create a very expensive burden on the taxpayers if it's the taxpayers that then have to go out and really account for or hold the Department? I mean, the Department's made a mistake, but you're saying it's the taxpayers who have to file an objection and file suit. Yes, ma'am. It's not easy for taxpayers in Illinois. And there are good reasons for that because property tax revenue is the lifeblood of government. And so the General Assembly has provided a system that does put the burden on the taxpayer to prove, if it can, what's wrong with this assessment. The vehicle for that is the tax objection complaint. And stop and think about it in this context. Who was aggrieved? Let's assume for the sake of the argument that the tax year 2013 was flawed, it was wrong. Who's harmed? Is the clerk harmed? You mentioned what about the DuPage and the other county taxpayers who you say, I believe, in 2013 should have filed a tax objection on the basis of what? That the May 2013 certification was wrong. There was something wrong with it. And that's what happened in the in-ray application of Anderson for a case that we cite here in our briefs. That was a case in this district. That's what the taxpayer did. Hey, these factors are wrong. I paid too much. These other people paid too little. I'm litigating this. And the question in that case was, is the tax objection complete? How would they know that until after the second certification came out? Well, you have to you have to watch what the department is doing. But again, the department in May of 2013. Have you ever watched what the department has been doing? Have you ever studied how they come up with these factors? That's part of my job, Your Honor. Yes, sir. So, yeah, it's but the burden is on the taxpayer. That's a bedrock principle. And the jurors prove this is conclusive to that. There are going to be errors in the system. There's no question about it. But there are ways that you address those errors. And when taxpayers fail to address, to engage the process, it's final. The only thing that has to be done in order to give the clerk the authority to do this is to change the word V to A, correct? Correct. And that was the mistake the trial court made in interpreting the statute. She thought the word was a subsequent year. That's an indefinite article. V is a specific article. The other thing, too, is you read 18157 and 155 in Paramateria. The General Assembly used the words in the subsequent year in both statutes. But in 18157, they said in the subsequent year or any subsequent year. That tells you the General Assembly knows the difference between the subsequent year, which is singular, and a subsequent year, which could be more than one or two. So the statutory language here is the key because we can only do what's expressly provided by law. The clerk can only do it in the subsequent year and for the purpose of replacing the placeholder factor. That's it. Not correcting the mistake. And that's regardless of whether or not the department's numbers are right or wrong. But the department gives you, gives the clerk, the second batch of numbers or the untimely batch of numbers is now given. You take out the placeholders, put the new numbers in, do the calculation. If it's up or down, you adjust the next year's tax bill. And anybody that feels aggrieved by that, file your tax objection complaint, litigate it. But then why are these studies done? I mean, they're the provision in the statute regarding the additional data studies. If the correction can only be made once, why does the department continue to study this and make new analyses? It's not in the record why they continue to flail away at this and continue to, they're not required to do it by the statute. The statute tells them certify a factor by March 15th. If you can't, here's what's going to happen. They don't say make sure, you know, the department will make mistakes. And, you know, the process to address that mistake, again, I keep coming back to it, it's the system that we have. And the General Assembly has drawn the line, and taxpayers have to follow that line, observe that line. And line drawing is exactly, that's the function of the General Assembly, that's why we have one. They make the rules, and we have to follow them. When did they come up with this ameliorating or remedial statutory language? I beg your pardon? When did the legislature come up with the idea that if the department is late in certifying overlapping taxing district rates, that they could, quote unquote, the clerk was then authorized to put place numbers in, or placeholders, and then the next year apply what is considered to be a certified but late factor. Because back in the middle 70s, there was no legislation that provided for that. But that's what the clerks did without any authority in the law. Yes, Your Honor, I don't know how far back that goes. I know it precedes what is now the Revenue Act of 1995. So it wasn't part of the Revenue Act of 1939, that I know. But it's been the law for, as far as I know, at least 20, 25, maybe 30 years. These provisions of Section 18- My point is that back in the 70s, there was no statute. It was done by the clerks, despite the fact that there was a statute that didn't authorize them to use placeholders. But they used placeholders anyway because, as they claimed, tax anticipation warrants that would have been issued had they waited would have cost the taxpayer more money than by just putting in placeholders. Well, then 18-155 codifies that practice with the proviso. We're going to square up, and we've got the right number. We're going to square it up. And that anybody that has a problem with once we have a number is the tax objection complaint. So when there was no 2013 tax objection filed by Cooper DuPage taxpayers, that was final. It doesn't matter if it was right or it was wrong. It was final. The issue was adjudicated. It's over. So there was, you know, in that sense, there was nothing for the clerk to correct in 2014. The matter had been done. And same thing for this case here. Only these 600 taxpayers have filed a tax objection complaint. So what the clerk did for 2014, for everybody else, it's final. So, Your Honor, we'll submit the rest of it to you on a brief site. I know I'm out of time, and I appreciate the extra time you've granted. So if there are no further questions, we are asking you to declare the action of the King County clerk in regard to the 2014 extension to be null and void, illegal, violative of Section 18155, reverse the order of the trial court, and remand it for the calculation of refunds for my clients. Thank you. Thank you. You'll have an opportunity to make rebuttal. Thank you. Mr. Walvis. Thank you, Your Honor. Assistant State's Attorney Joseph Walvis on behalf of King County Collector and King County Clerk. We disagree with almost every statutory statement that counsels made on behalf of the plaintiffs. First of all, there isn't any discretion for county clerks. Section 1855 is replete with the word shall. County clerks are required to follow the direction of the Department of Revenue when they issue certifications regarding apportionments. It is not discretionary. The King County clerk did so because in the statute it repeatedly says shall put these into effect. Second item, there is no temporal restriction on the ability of the Department of Revenue to do apportionments. The legislature could have said you're limited to one tax year or subsequent tax year. It did not. There is no restriction on the Department of Revenue's ability to correct an injustice or wrong if they see it. They did so in this case by issuing subsequent. Is the term subsequent year supposed to indicate the time frame in which these certifications are supposed to come out? In other words, they're not supposed to be two certifications in one taxing cycle where you submit supplemental bills? Because that's one interpretation, is it not, relative to the subsequent year? Absolutely, Your Honor. We believe in the context of 1855, subsequent year, tying that to the subsequent tax year is a work of art, a creation by creative plaintiffs. In fact, when you look at the total statute, subsequent year would refer to the year subsequent to the certification or amended certification issued by the Department of Revenue. But it says the. It's not a subsequent year, the subsequent year. To the certification. You're reading words in there. It doesn't say that. It says shall make appropriate adjustments in the subsequent year. Your Honor, I would suggest it also does not say the year subsequent to the tax year. But it has to be the year subsequent to the tax year if it's the next year. By virtue of how it operates. That then makes all the Department of Revenue's subsequent amendments a nullity. It means they're sending something out that will not be put into place by a county clerk. It would mean that no one is going to know. The county clerk has already done it. The county clerk took the first redo, if you will, and acted upon it. Correct. How many times is the county clerk to amend the taxes for taxes that accrued in 2012? Indefinitely? Judge, the county clerk under the statute with the repeated use of the word shall does not have discretion to ignore the Department of Revenue guidance on certification. He's not ignoring it. He's already complied with it. And when it came out in December of 2014, he's faced with either putting it into place or putting it in a drawer and hiding the fact that the Department of Revenue is informing his office that there has been, in fact, a mistake under 2012. Why would a taxpayer's taxpayer's action go into court and say, what am I supposed to do with this? Why would this be the objection that the taxpayers have to? How would they know? Well, that was my question, but counsel, answer the question. If it's a Department of Revenue Senate 2014 guidance, there's no way for taxpayers to know about that unless the county clerk adheres to the shall language in the statute and extends. And I would suggest to the court that the county clerks do not have the discretion under 18155 to decide whether they're going to ignore the Department of Revenue. But counsel, you said they don't have the authority either. Once you've complied. That's it. That's the end of your authority. No matter what more mail you get. That's it. But the statute doesn't say subsequent to the tax year and does not limit the Department of Revenue. What do you think subsequent year means? I believe it means subsequent to the certification issued by the Department of Revenue. Where does it say that in the statute? Where does it say, okay, certification subsequent year, new certification subsequent year? I mean, you're changing the temporal. I don't mean to be yelling at you. I apologize. I'm getting exuberant. It's the end of the day. I apologize. But you're somewhat changing the framework of this temporal by putting in subsequent to the last certification. I don't believe I am because all the documents and all the actions taken by the Department of Revenue, the county clerks and that way are given effect under the statute. Under the plaintiff's reading of tying this to the subsequent tax year, it means now repeated certifications by the Department of Revenue are a nullity to be ignored. People have to – the taxpayers don't even know about it. Somebody is supposed to run in and do something. But it means the Department of Revenue now is issuing things. We're doing studies for which there's no purpose. Well, it wouldn't be the first time government does things for which there is no purpose, but we won't go there. What about counsel's argument about finality, that at some point the taxes for 2012 have to be put asunder and we're done? I don't have a good response to that. Fair enough. Fair enough, Judge. I think that's a good point by counsel. I also think that the legislature drafted this, giving logically broad authority to the Department of Revenue on these cross-county type issues, broad authority to correct incorrect determinations if they find that. And this would – the reading from the plaintiffs would deprive the Department now of correcting, say, an injustice. But we don't really care. We're concerned about finality. Justice and fairness are oftentimes subordinated to timeliness. Some people would rather have it in time than actually have it being appropriate in any way. Temporally, metaphysically, is it possible for anyone to extend taxes in a year subsequent when there has been no certification from the Department of Revenue? Well, I believe at that point, temporarily, they would have to use the prior. The point is that the way the statute is written, it presumes that there is a timeline. And that when you say in the subsequent year, it means that if supposedly the certification was for correction of something that happened in the year previous, then the correction should be done in the subsequent year. It doesn't necessarily mean that if there's only one year and everything subsequent to that is a nullity. In other words, if people are doing their jobs efficiently, when the Department certifies a factor, the clerk ought to do it and apply it within that year or that time frame. The clerk shouldn't wait one year or three years. It should be done in the subsequent year. And the clerk did not wait. When it received the 2013, as counsel has conceded, the clerk appropriately applied that. It was receiving two more in the following year from the Department of Revenue that set up this somewhat unique situation for the clerk to have to make a decision. And under the statute, I know I've said it before, but repeatedly it says the clerk shall extend when they receive this guidance from the certifications from the Department of Revenue. In the year prior or in the subsequent year or in any year. In the year subsequent to the receipt of the certification from the Department. Subject to any further questions, we would be asking the court to affirm the trial court on this case.  Thank you. Thank you. I have a question. At least one. Was the Department of Revenue joined in this lawsuit by any chance? They were not. Was the Attorney General brought into this lawsuit or given notice of this? They were not, that I know of, no. Okay, thank you. Mr. McNulty. If I could follow up to your question, Mr. Justice McClaren. The reason those parties were not brought in is because under the relatively newly created tax objection process, the statutory defendant is the county treasurer. That's why the county treasurer is the name defendant in this case. The General Assembly specifically directed the tax objection complaints named the county treasurer ex officio collector for any and all tax objection complaints. That's why the Department was not brought in or was not named as a party defendant in this proceeding. The reason why I ask is because you could have probably sought injunctive relief. One of the easiest forms of injunctive relief would have been to inform the Department of Revenue to cease and desist. And then it would be a question of whether the clerk was or wasn't forced to result in effect be a minion of the Department of Revenue. So the reason why I was asking was I was trying to find out, similar to situations where FOID cards are granted, FOID card holders who lost their FOID cards are given the opportunity to have some judicial review. And then there was this issue about whether or not the state police should be considered parties, necessary parties, interested parties, and so on. Because it seems like they are the ones whose ox was being gored when the FOID card they're supposed to issue was ordered. And so if the clerk is certifying rates or apportionments that the Department of Revenue is not supposed to be issuing because of what your interpretation is, it would seem to me that maybe they should be apprised of the fact that they're doing something that not only is wrong but is very expensive besides. And regardless of whether it might solve an injustice or not. I appreciate that comment. As a former assistant state's attorney myself, I could tell you that whenever a taxpayer tried to get an injunction, I would always stand here and say they have to follow the adequate remedy provided by law, which is the tax ejection complaint. And so that's the reason we brought this proceeding. We did consider that. To your other point, Your Honor, about why did this get fixed right away? That points towards 18-156 of the property tax code, which is not involved here. It's not. Because it was effective for the 2015 tax year. But that carves out another specific set of circumstances that weren't applicable in this particular instance because they set a threshold of 5%. But that conveyed some power to make some alterations to the bills currently. Now, if my opponent was right and he had, the county clerk, has free will and authority to correct anything at any time for any reason, why did the General Assembly then enact 18-156 that set forth a specific set of circumstances that let you intervene yet again in a situation like this? You keep referring to the clerk as the clerk being the one who is meeting out justice. He's doing what, in essence, at least in my opinion, is a ministerial function or act. That's what we say. All that the, quote-unquote, powers that be, all the justice, equity, and fairness is being meted out by the Department of Revenue. Right. Well, we say the clerk performed his ministerial duty when he made that one adjustment in the subsequent year. That ended his ministerial duty. Now, they say they made the correction because an error had been made. How do we know that? Which one of the three shots was right? We don't know. So if property tax extensions are going to be based upon a county clerk's perception of a mistake or fairness, we're going to have 102 different systems of property taxation in this state. That's not what the General Assembly is provided for. This system, 18-155, 156, and 157, is a very carefully thought out and woven statutory scheme. It reflects the balancing of the public interest made by the General Assembly in this case. They drew the lines. The county clerk went over it. So he had no authority to do what he did in 2014. So we're asking you again, please reverse the order of the trial court and remand this case with instructions to calculate the refunds. When was the statute in question passed? 18-156 was passed, I believe it was August of 2015, and it was made applicable to the 2015 tax year going forward. Is that the argument that was not raised in the trial court? Am I mistaken? I believe we raised that. We referenced 18-156. And it doesn't apply to this case, but it's just another example of if there was this free-willing authority, why don't we have this law? So, again, we're asking you to reverse and remand with instructions as we pray in our grief. I thank the clerk for his time. Court's adjourned.